# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT TAYLOR,** | : |
| | : |
| | : **CIVIL ACTION** |
| **Plaintiff,** | : No. 2:17-cv-03369 |
| | : |
| v. | : |
| | : |
| **THE COMONWEALTH OF PENNSYLVANIA, et al.** | : |
| | : |
| | : |
| **Defendant** | : |
| | : |

## ORDER

AND NOW, this _____ day of _____, 2018, upon consideration of Defendants The City of Philadelphia, Officer Obrien, Warden Gerald May, and Sgt. Lebesco's Motion to Dismiss, it is **HEREBY ORDERED** that the Motion is **GRANTED** and that Plaintiff's claims as to Defendants the City of Philadelphia, Officer Obrien, Curran-Fromhold Correctional Facility, Warden Gerald May, Sgt. Lebesco, and the Philadelphia Sheriffs Office are dismissed **WITH PREJUDICE**.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT TAYLOR,** : | |
| : | **CIVIL ACTION** |
| Plaintiff, : | No. 2:17-cv-03369 |
| : | |
| v. : | |
| : | |
| **THE COMONWEALTH OF** : | |
| **PENNSYLVANIA, et al.** : | |
| : | |
| **Defendants** : | |

## DEFENDANTS THE CITY OF PHILADELPHIA, OFFICER O'BRIEN, WARDEN GERALD MAY, AND SGT. LEBESCO'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants The City of Philadelphia, Officer Obrien, Warden Gerald May, and Sgt. Lebesco ("Moving Defendants"), by and through the undersigned counsel, hereby file this Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, the Moving Defendants incorporate the attached Memorandum of Law. The Moving Defendants respectfully request that this Court dismiss the claims asserted against the Moving Defendants, as well as against The Philadelphia Prison System/Department of Prisons Curran-Fromhold Correctional Facility and The Philadelphia Sheriffs' Office with prejudice.

Date:  June 4, 2018                                            Respectfully submitted,

                                                                                 /s/ Andrew F. Pomager
                                                                               Andrew F. Pomager
                                                                               Assistant City Solicitor
                                                                               Pa. Attorney ID No. 324618
                                                                               City of Philadelphia Law Department
                                                                               1515 Arch Street, 14th Floor
                                                                               Philadelphia, PA 19102
                                                                               215-683-5446 (phone)
                                                                               215-683-5397 (fax)
                                                                               andrew.pomager@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT TAYLOR,** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | No. 2:17-cv-03369 |
| : | |
| v. : | |
| : | |
| **THE COMONWEALTH OF** : | |
| **PENNSYLVANIA, et al.** : | |
| : | |
| **Defendant** : | |

**MEMORANDUM IN SUPPORT OF MOVING DEFENDANTS'**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiff Robert Taylor's Amended Complaint should be dismissed against Defendants The City of Philadelphia (the "City), Police Officer Obrien, Warden Gerald May, and Sgt. Lebesco (collectively, "Moving Defendants"), as well as named Defendants "The Philadelphia Prison System/Department of Prisons Curran-Fromhold Correctional Facility (CFCF)" ("CFCF") and "The Philadelphia Sheriffs Office" (the Sherriff's Office"). Plaintiff's conclusory allegations against every conceivable party from his arrest in 2015 to his release in 2017, for every conceivable claim, was clearly an attempt to throw everything at the Courts and Defendants and, without regard to the merit of his claims, hope that something stuck. Accordingly, and because Plaintiff's allegations, lacking any identification of specific individuals or instances, failed to rise to the level of constitutional violations, his Amended Complaint is highly appropriate for dismissal. In addition, Plaintiff improperly sued CFCF and the Sheriff's Office, which are not legal entities amenable to suit, failed create an inference of any plausible supervisory liability on Warden May, and failed to create an inference of any plausible municipal liability on the City in accordance with Monell.

I.     **BACKGROUND**

On April 23, 2018, Plaintiff Robert Taylor filed an amended complaint against Moving Defendants as well as, *inter alia*, CFCF and the Sheriff's Office. Am. Compl. (ECF No. 10).

Plaintiff alleged that on November 16, 2015 he was falsely arrested and that Officer Obrien was apparently present at the arrest. See Am. Compl. at ¶¶ 8, 9 (ECF No. 10) ("plaintiff was unreasonably summoned to stop on the sidewalk by members of the Philadelphia police department. Officer (s) Obrien badge no. 7461 with an accompanying officer. . . . Plaintiff was then subjected to arrest and unreasonable search and seizure by officers mentioned above without cause"). The Amended Complaint contained no further reference to Officer Obrien, nor did it describe the circumstances of the arrest.

Plaintiff alleged that for up to 8 hours in the custody of the Sheriffs' Office, he had "been subjected to harsh condition of inadequate food and drink" and confined to overcrowded cold cells where he was unable to sit. Am. Compl. at ¶¶ 17–18 (ECF No. 10).

The remainder of Plaintiff's allegations, as they relate to Moving Defendants, concern activities during or conditions of his confinement at CFCF. Plaintiff alleged that mail from the Court had been opened and "tampered with" before being provided to him. See Am. Compl. at ¶¶ 26–28, 33 (ECF No. 10). He claimed he "could not verify orders and instructions with certainty from [the Court] as information therein was inconsistent and rearranged due to this tampering." Am. Compl. at ¶ 29 (ECF No. 10). Plaintiff alleged, apparently, that this activity delayed his response to Court mail and "brought about an order against him." Am. Compl. at ¶ 30 (ECF No. 10).

Plaintiff alleged he was placed in two-man cells with two or three other inmates. Am. Compl. at ¶ 37 (ECF No. 10). He alleged he slept in a plastic "boat" and was exposed to "severe cold temperature." Am. Compl. at ¶¶ 38–39 (ECF No. 10). He further alleged inadequate food,

"excessive lockdowns and restrictions," corporal punishment, and strip searches in front of other inmates. Am. Compl. at ¶ 40–41 (ECF No. 10). Plaintiff alleged that on July 7, 2017, during "an unreasonable search and assault," Defendant Sgt. Lebesco had another correctional officer pepper spray Plaintiff. Am. Compl. at ¶ 43 (ECF No. 10).

Plaintiff claimed he was denied his right to free the exercise of Islam. He claimed he was "continually denied proper food of his religious mandate." Am. Compl. at ¶ 47 (ECF No. 10). Plaintiff alleged that during a period of religious daytime fasting, he was "not brought any food or drink whatsoever until 1 to 2 hours after required time to eat and drink." Am. Compl. at ¶ 49 (ECF No. 10). Plaintiff claimed he was not afforded weekly religious services led by a chaplain. Am. Compl. at ¶ 50–51 (ECF No. 10). Plaintiff alleged that, contrary to his religious beliefs, female correctional officers performed "body pat-frisk searches" of him. Am. Compl. at ¶ 52 (ECF No. 10).

Plaintiff alleged he was refused certain medical treatments. He claimed he needed, and was approved for, vegetarian meals and health shakes. See Am. Compl. at ¶¶ 57–61 (ECF No. 10). Plaintiff alleged he was not provided the health shakes. Am. Compl. at ¶ 61 (ECF No. 10). Plaintiff also alleged that he had been provided "food packs with meat." Am. Compl. at ¶ 60 (ECF No. 10). Plaintiff alleged that, although he requested an inhaler refill on April 17, 2017, he had an "asthma attack after being ignored by medical" on April 21, 2017. Am. Compl. at ¶ 64–66 (ECF No. 10). Finally, Plaintiff alleged that after being pepper sprayed on June 25, 2017, he was brought to medical but "was purposely, deliberately refused decontamination and medical attention" for 45 minutes. Am. Compl. at ¶ 67 (ECF No. 10).

Plaintiff identified no individuals who refused him medical care or restricted his religious exercise. Aside from Sgt. Lebesco and the other correctional officer involved in the July 7, 2017

search, the only individual identified by Plaintiff in connection with his detention at CFCF was Warden May. Plaintiff alleged "throughout [the] duration of detention of Plaintiff at (CFCF) institution which Warden Gerald May is Custodian. He has been held unconstitutionally." Am. Compl. at ¶ 36 (ECF No. 10). Under the section alleging deprivation of Plaintiff's religious rights, Plaintiff alleged "[t]he warden has causal connection by history of widespread violations putting warden on notice of the need to correct the deprivation and he failed to do so. The Practice 'Custom or Policy' of the warden resulted in violating the constitutional rights of Plaintiff." Am. Compl. at ¶ 53 (ECF No. 10). The only other allegations concerning a warden are under the section alleging deprivations of Plaintiff's religious rights, amounting to a conclusory allegation that the "history of widespread violations" put the "warden on notice of the need to correct the deprivation and he failed to do so." Am. Compl. at ¶¶ 52–53 (ECF No. 10).

## II.   ARGUMENT

A plaintiff cannot survive a motion to dismiss under Rule 12(b)(6) without stating a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal conclusions." Anspach v. City of Philadelphia, 503 F.3d 256, 260 (3d Cir. 2007). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Id. (quotation marks omitted).

Although a pro se plaintiff's pleading should be construed liberally, it still must meet the Iqbal plausibility standard. Phillips v. Northampton Cnty., 687 F. App'x 129, 131 (dismissal appropriate where pro se inmate plaintiff failed to allege supervisors' personal involvement in

constitutional violations) (3d Cir. 2017) (citing Fantone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015)).

### A. The Court Should Dismiss Claims Against CFCF and the Sheriff's Office Because they are Facilities or Departments of the City of Philadelphia and Not Legal Persons Subject to Suit

The undersigned counsel has not appeared for CFCF or the Sheriff's Office but the Moving Defendants move for their dismissal from this suit.[1] Departments of the City of Philadelphia do not have a separate corporate existence and are not properly named as parties to a suit. 53 Pa. Stat. § 16527. A plaintiff fails to state a claim against a correctional facility, including CFCF, because a correctional facility is not a person subject to suit. Keys v. Curran-Fromhold Corr. Facility, No. 14-1757, 2014 WL 2039678, at *1 (E.D. Pa. May 15, 2014). Likewise, the Philadelphia Prison System does not have its own existence and cannot be sued directly. Griffith v. Phila. Prison Sys., No. 99-6338, 2001 WL 876804, at *1 n.1 (E.D. Pa. May 18, 2001). The Sheriff's Office is not a separate judicial entity and should also be dismissed from suit. See Butts v. SCI Camp Hill, No. 08-2259, 2009 WL 222653, at *1 (M.D. Pa. Jan. 29, 2009). Accordingly, dismissal with prejudice against CFCF and the Sheriff's Office is appropriate.

### B. The Court Should Dismiss Officer Obrien and Any Claims Arising from the Arrest and Search Because Plaintiff Alleged No Facts Suggesting the Elements of These Claims Are Present

To state a claim under § 1983, including a false arrest claim, a plaintiff must meet a "threshold requirement" of alleging facts demonstrating a defendant's personal involvement in the alleged misconduct. Longenberger v. Miner, No. 17-00588, 2018 WL 1070804, at *5 (M.D. Pa. Feb. 27, 2018) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). To state a

---

[1] Plaintiff's service upon all Defendants, including these entities, was also defective because it was attempted by ordinary mail. See Fed. R. Civ. Proc. 4(e), (j); Pa. R. Civ. Proc. 403, 422.

claim for false arrest and imprisonment, the plaintiff must point to facts suggesting that Defendants lacked probable cause to believe the plaintiff committed the offense for which he was arrested. Godfrey v. Pennsylvania, 525 Fed. App'x 78, 80 (3d Cir. 2013) (citing Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)). Similarly, to recover for an illegal search and seizure, the plaintiff must show the search and seizure were illegal. Gresh v. Godshall, 170 F. App'x 217, 220 (3d Cir. 2006) (citing Heck v. Humphrey, 512 U.S. 477, 482 n.7 (1994)). Where this is no constitutional violation by an individual police officer, there is no basis for municipal liability against the officer's employing municipality. Kopczak v. Borough of Scottdale, No. 06-0766, 2008 WL 282337, at *7 (W.D. Pa. Jan. 31, 2008) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

Accordingly, Plaintiff's sparse and conclusory allegations concerning his arrest and search failed to raise an inference that any of the defendants are liable on a false arrest, false imprisonment, or illegal search and seizure claims. As an initial matter, Plaintiff did not allege the personal involvement of Officer Obrien, much less any other Defendant, in the arrest or seizure. While he is identified in the paragraph alleging he was unreasonably stopped, his role in the stop, arrest, and search is entirely undefined. Even reading a pro se plaintiff's complaint favorably, Defendant Officer Obrien is entitled to actually be accused of some action in the pleading for it to plausibly state a claim against him.

Further, Plaintiff failed to allege any facts to suggest the arrest was without probable cause or that the search was illegal. His statements that he "was unconstitutionally falsely arrested [and] searched," that he was "unreasonably summoned to stop," and that the "arrest and unreasonable search" were "without cause" repeat the same bald legal conclusion. Because Plaintiff failed to allege a constitutional violation, he similarly did not establish liability against

the City of Philadelphia, or any other Defendant, arising from his arrest or search. The claims arising from his arrest, imprisonment, and search, should be dismissed, and Officer Obrien should be dismissed from the suit.

### C. Plaintiff Did Not Allege that Defendant Warden Gerald May Was Deliberately Indifferent to Any Known Risks and He Should Therefore Be Dismissed

Because liability for a civil rights claim cannot be imputed vicariously, an individual defendant must have personal involvement in the alleged constitutional violation. Evancho v. Fisher, 425 F.3d 347, 353 (3d Cir. 2005) (dismissal of Attorney General appropriate where complaint merely hypothesizes Attorney General's involvement in alleged violations based on his position). Supervisory liability for an Eighth Amendment claim can be established where the plaintiff shows (1) a specific supervisory practice or procedure that a defendant supervisor failed to employ; (2) that an existing custom and practice without the specific practice or procedure created an unreasonable risk; (3) that the supervisor defendant was indifferent to that risk; and (5) that the plaintiff's injuries resulted from the existing policy or practice. Counterman v. Warren Cnty. Corr. Facility, 176 F. App'x 234, 240–41 (3d Cir. 2006) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001)). For an official to violate the Eighth Amendment, he must be deliberately indifferent. Farmer v. Brennan, 511 U.S. 825, 837 (1994). That is, the official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Id.

Plaintiff in his Amended Complaint, even construing it liberally, sought to impute liability to Warden May solely on the basis of his position. This is improper according to Evancho. Plaintiff created no inference that Warden May could plausibly have been liable under the supervisory liability elements by simply stating he was the custodian of CFCF and that the

7

practice, custom, or policies "of the warden resulted in violating the constitutional rights of Plaintiff." Plaintiff did not identify a specific policy or practice that Warden May failed to employ. He did not allege that Warden May had knowledge of a substantial risk of serious harm to Plaintiff, much less that Warden May disregarded that known risk. Accordingly, Plaintiff failed to plead supervisory liability and his claims against Warden May should be dismissed.

### D. The Court Should Dismiss Claims Against the City Because Plaintiff Failed to Plead Facts Plausibly Establishing the Elements of a Monell Claim

A municipality cannot be held liable under § 1983 for its employees' constitutional torts by way of respondeat superior. McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Rather, under Monell, a municipality may be liable in one of three ways. Id. (citing Monell, 436 U.S. at 694). First, the municipality may be liable if the employee acted pursuant to a government policy or custom. Monell, 436 U.S. at 694. Second, the municipality may be liable if the employee had policy-making authority. McGreevy, 413 F.3d at 367. Third, the municipality may be liable if an official with authority ratified the unconstitutional actions of the subordinate employee.

The Third Circuit has held on multiple occasions that a complaint which neglects to allege conduct by a municipal decisionmaker cannot survive a motion to dismiss its Monell claim. McTernan v. City of York, 564 F.3d 636, 658–59 (3d Cir. 2009); see Rees v. Office of Children & Youth, 473 F. App'x 139, 143 (3d Cir. 2012) (holding that a complaint cannot state a Monell claim if it "fails to link the alleged offending policies or customs to anyone within [a municipality] who had policy-making authority"); see also Andres v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990) (noting that a municipal decisionmaker in a § 1983 case must possess "final, unreviewable discretion to make a decision or take an action").

8

Plaintiff failed to allege with any specificity either the policies or customs that would impute liability to the City or to identify a municipal policymaker linked to the allegedly offending policies. Plaintiff did allege that he was triple- and quadruple-celled at times. He also claimed generally that acts or omissions concerning his religion and medical care constituted constitutional violations. However, Plaintiff did not connect these to any alleged custom or policy. They resided, instead, at one of two ends of a spectrum. Plaintiff pled, on the one hand, very isolated instances, such as one where his meal was delayed after fasting. See, e.g., Am. Compl. at ¶ 49 (ECF No. 10). Or, on the other hand, Plaintiff pled generally that some condition of his conduct, without reference to specific instances, much less a course of conduct or policy, violated his rights. See, e.g., Am. Compl. at ¶ 47 (Plaintiff "is continually denied proper food of his religious mandate"). Moreover, as discussed *infra*, even if these acts or omissions did constitute customs or policies, they did not rise to the level of constitutional violations.

Plaintiff similarly did not identify a municipal policymaker as required by Monell. He did, of course, identify Warden May as a Defendant, but did not allege the scope of his decision-making authority, a link to the allegedly violative policies or customs, or whether Warden May had final decision-making authority with respect to the subjects Plaintiff complained of. Due to Plaintiff's failure to raise an inference of municipal liability, the City should be dismissed as a Plaintiff.

### E. Plaintiff's Allegations Concerning His Confinement Do Not Rise to Constitutional Violations

#### 1. The Court Should Dismiss Plaintiff's Access to the Courts Claim Because the Alleged Mail Tampering Did Not Prevent Access or Cause Actual Injury

A prisoner making an access to the courts claim must show a denial of access to the courts caused actual injury. Watson v. Sec'y Pa. Dept. Corr., 567 F. App'x 75, 78 (3d Cir. 2014) (dismissal of access to courts claim for alleged mail tampering appropriate where complainant

9

was still able to file his brief). The plaintiff must describe an arguable claim well enough to show it is "more than mere hope." Flowers v. Phelps, 514 F. App'x 100, 102–03 (3d Cir. 2013) (internal quotation marks removed). As an initial matter, as with his false arrest and search claims, Plaintiff did not identify any Defendants personally involved in the alleged mail tampering. Additionally, Plaintiff appears to have suggested that receipt of his mail as "inconsistent and rearranged" affected his ability to meet the timely filing schedule of the courts. See Am. Compl. at ¶¶ 29–30 (ECF No. 10). Nonetheless, Plaintiff conceded he filed his notice of appeal. Even assuming "rearranging" mail could unconstitutionally inhibit access to the courts, the allegations in Plaintiff's Amended Complaint indicated it did not in this case.[2] Moreover, Plaintiff did not articulate the nonfrivolous claim he lost, much less sufficiently show it was more than a "mere hope" as required by Flowers. For all these reasons, Plaintiff's claims for denial of access to the courts should be dismissed.

### 2. The Court Should Dismiss Plaintiff's Conditions of Confinement Claim Because He Failed to Allege Facts that Rose to a Constitutional Violation

A plaintiff cannot bring a § 1983 claim without demonstrating that he suffered the deprivation of a federal right. A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 579 (3d Cir. 2004). "The Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). To state an Eighth Amendment claim, a prisoner must

---

[2] A review of the relevant docket indicates that Plaintiff's Notice of Appeal was docketed on August 30, 2016 and Plaintiff was denied a certificate of appealability not because of his failure to meet court deadlines, but because he had not exhausted his state court remedies. See Notice of Appeal, Taylor v. Philadelphia Prison System, 16-02444 (E.D. Pa. Aug. 30, 2016), ECF No. 8; Order, Taylor v. Philadelphia Prison System, 16-02444 (E.D. Pa. Dec. 30, 2016), ECF No. 10.

show a sufficiently serious deprivation of the minimal civilized measure of life's necessities. Allah v. Ricci, 532 F. App'x 48, 50–51 (3d Cir. 2013) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Allegations that an individual was housed in a cell meant for fewer people, alone, is insufficient to amount to a constitutional violation. See Wagner v. Algarin, 2010 WL 5136110, at *1, 3 (E.D. Pa. Dec. 16, 2010) (prisoner's placement in four-man cells and rooms not expressly intended for occupancy were insufficient to state violations under either the Fourteenth or Eighth Amendments); Gardner v. Lanigan, 2013 WL 6669230, at *3 (D.N.J. Dec. 18, 2013) (conditions of imprisonment, including that prisoner had to sleep on a cold floor, did not rise to constitutional violation).

Plaintiff here alleged little more than that he was placed in a three-man cell, had to sleep on a makeshift bed, and was cold. These deprivations are no greater than those stated in Wagner or Gardner, and simply do not rise to "serious deprivations" of the minimal civilized measures of life's necessities. Plaintiff did allege under his "Conditions of Confinement" heading that a correctional officer, A. Smith, discharged pepper spray at Plaintiff. But this one paragraph allegation was again conclusory, provided no factual context to suggest the use of force was unreasonable, and did not allege that Sgt. Lebesco, or any other named Defendant, was the individual who pepper-sprayed Plaintiff. For these reasons, Plaintiff's Fourteenth and/or Eighth Amendment claims concerning the conditions of his confinement should be dismissed.

> 3. *The Court Should Dismiss Plaintiff's Free Exercise and Discrimination Claims Because He Pled These With No Specificity and De Minimis Limitations on His Religious Diet Are Not Constitutional Violations*

Although inmates have a First Amendment right to the free exercise of their religions, imprisonment necessarily results in some restrictions on the practice of religion. Ford v. Bureau of Prisons, 570 F. App'x 246, 249 (3d Cir. 2014) (complaint based on, *inter alia*, brief disruptions in inmate's diet and intermittent failures to receive meals during fasting was

11

appropriately dismissed). Appropriate limits on free exercise of religion may arise from valid penological objectives. Id. Intermittent problems with food preparation imposing only de minimis burdens on the exercise of religion do not violate the Free Exercise Clause. Tapp v. Proto, 404 F. App'x 563, 565 (3d Cir. 2010). Here, Plaintiff has made conclusory allegations that he was denied "proper food of his religious mandate." The only factual context provided by Plaintiff is that, in one instance, he had to wait 1 to 2 hours after fasting to receive a meal. Considering Ford and Tapp, Plaintiff failed to make out a constitutional violation with these allegations. Similarly, Plaintiff's allegations that he was denied "religious worship and assemblage," including in relation to other religious, is similarly stated in a conclusory fashion with no allegations making out specific instances, times, places, or individuals involved in these decisions. The fact that Plaintiff identified dates on which he allegedly filed grievances, and that he attached those equally conclusory grievances to his Amended Complaint, added nothing to resolve the lack of specificity in his Amended Complaint. Accordingly, his claims concerning the exercise of his religion should be dismissed.

      F.      <u>The Court Should Dismiss Plaintiff's Medical Care Claims Because He Identified No Individuals Involved in His Medical Care and Identified No Conduct Evidencing Deliberate Indifference to Serious Medical Needs</u>

The Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs that can offend evolving standards of decency. Id. at 106. In Joh v. Suhey, the Third Circuit held that a nurse's alleged failure to treat a broken finger over the course of an hour was insufficient to state deliberate indifference. 709 F. App'x 729, 730–31 (3d Cir. 2017). Once again, as it pertains to Plaintiff's medical claims, he did not allege any individuals directly involved in the alleged wrongs. In addition, Plaintiff's allegations concerning

the nature of his diet, and its effects on his health, are again conclusory and failed to identify specific instances of alleged wrongs. Plaintiff's dietary complaints, in any case, did not evidence deliberate indifference to serious medical needs. In addition, the alleged failure to decontaminate Plaintiff after he was pepper sprayed lasted only 45 minutes. Considering <u>Joh</u>, this delay is not sufficient to state deliberate indifference and Plaintiff's medical care claims should be dismissed.

### III. CONCLUSION

For all the foregoing reasons, the Court should dismiss Plaintiff's claims against the Moving Defendants and The Philadelphia Prison System/Department of Prisons Curran-Fromhold Correctional Facility and The Philadelphia Sheriffs' Office with prejudice.

Date: June 4, 2018                                    Respectfully submitted,

                                                       /s/ Andrew F. Pomager
                                                      Andrew F. Pomager
                                                      Assistant City Solicitor
                                                      Pa. Attorney ID No. 324618
                                                      City of Philadelphia Law Department
                                                      1515 Arch Street, 14th Floor
                                                      Philadelphia, PA 19102
                                                      215-683-5446 (phone)
                                                      215-683-5397 (fax)
                                                      andrew.pomager@phila.gov